# UNITED STATES DISTRICT COURT

for the
District of New Mexico

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 23-MR-185 |
| 1317A LA VEGA DR SW, ALBUQUERQUE, NEW MEXICO 87105 | ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing in and harboring certain aliens |

The application is based on these facts:
See attached affidavit, incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**ERIC A MILLARD**
Digitally signed by ERIC A MILLARD
Date: 2023.01.26 16:48:41 -07'00'

*Applicant's signature*

Eric A. Millard, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Via telephone and transmitted via email *(specify reliable electronic means)*.

Date: 01/26/2023

*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 1317A LA VEGA DR SW, ALBUQUERQUE, NEW MEXICO 87105 | Case No.   23-MR-185<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Eric A. Millard, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I, your affiant, make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 1317A La Vega Dr SW, Albuquerque, NM 87105 hereinafter "TARGET PREMISES," further described and depicted in Attachment A, for the things described in Attachment B.

2. I am a Special Agent (SA) with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been employed by HSI since February of 2019. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct criminal investigations and make arrests for felony offenses. I am graduate of the Federal Law Enforcement Training Center (FLETC) and a graduate of Homeland Security Investigations Special Agent Training (HSISAT) in Brunswick, Georgia. Prior to becoming a Special Agent, I was employed by the U.S. Border Patrol (USBP) for over nine and a half years as a Patrol Agent.  While employed with the USBP, I routinely conducted general border security duties which involved, but were not limited to, addressing human smuggling as it pertains to deterring and/or apprehending undocumented non-

citizens as they illegally entered the United States via border crossing. As a Special Agent with Homeland Security Investigations (HSI), I have participated in a wide range of federal criminal investigations, to include drug trafficking and human smuggling, and obtained numerous residential search warrants related to those crimes.

3. Throughout my law enforcement career, I have received training and gained experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and state laws including but not limited to: Alien/human smuggling, human trafficking, the importation and distribution of controlled substances, bulk cash smuggling, firearms offenses, wire fraud, and conspiracy.  I am authorized and presently assigned to investigate controlled substance violations, including violations of 21 U.S.C. § 841(a)(1), and federal immigration law, including violations of 8 U.S.C. § 1324. Additionally, I have received advanced training in dismantling and disrupting Drug Trafficking Organizations (DTOs), money laundering investigations, and served approximately twelve (12) months as a Task Force Officer (TFO) with the U.S. Marshals Service (USMS).

4. In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

    a. Information provided by Special Agents ("SA"), Intelligence Research Specialists (IRS) of the Department of Homeland Security, and other law enforcement officials ("Agents"), including oral and written reports that I have received directly or indirectly from said investigators;

    b. Sources of Information (SOIs)

      c. Results of physical surveillance conducted by agents during this investigation;

      d. A review of driver's license and automobile registration records;

      e. Records from commercial databases; and

      f. Records from the National Crime Information Center ("NCIC").

5. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6. Based on the facts set forth in this Affidavit, there is probable cause to believe that violation of 8 U.S.C. § 1324, have been committed, are being committed, and will continue to be committed using the TARGET PREMISES.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

(Continued on following page)

**RELEVANT CRIMINAL STATUTES**

8. I believe there is probable cause that the SUBJECTS have committed, are committing, and will continue to commit offenses involving violations of:

8 U.S.C. § 1324 – Bringing in and harboring certain aliens

**EVIDENCE SOUGHT DURING SEARCH**

9. Based on my training, experience, and participation in this and in similar investigations, I believe that individuals involved in human smuggling of undocumented citizens often conceal evidence of their activities in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access such as garages, carports and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences and businesses, so that they have ready access to it and so that they can hide it from law enforcement, including law enforcement officers executing search warrants at their residences or businesses. Evidence also may be found in other areas to which a human smuggler has ready access, such as rented storage areas and safety deposit boxes, or buried underground on their property. This evidence, which is discussed in detail in the following paragraphs, includes undocumented persons hiding in storage sheds or outbuildings, items typically found in possession of undocumented persons such as fraudulent forms of identification, foreign currency, fraudulent immigration documents, records, human smuggling stash house secondary locations, proceeds from human smuggling, and valuables obtained from proceeds.

10. Human smugglers often travel domestically and internationally to facilitate their human smuggling efforts. Evidence of foreign and domestic travel by persons engaged in illegal human smuggling includes travel itineraries, airline tickets, receipts, passports, and visas. These items are stored by human smugglers on their person or in their business, residences and

4

surrounding garages, outbuildings, carports and yards, the residences of relatives and in cars. Many of these items are accessible via the internet and can be downloaded and saved on a computer or digital media and on storage media. The term "digital media" includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

11. Human smugglers often use storage facilities for items related to human smuggling and human trafficking that are at a location away from their residences and businesses. These off-site storage facilities are often commercial storage lockers and rooms. These locations are often used to store or hide people, the personal belongings of illegally smuggled undocumented non-citizens, money, fraudulent documents, and valuables obtained through their illegal proceeds. Human smugglers often keep documents and other items tending to show the existence of other fraudulent documents, materials used to produce fraudulent documents, and valuables obtained through illegal proceeds in areas such as storage facilities. Those documents and other items include rental agreements, receipts, keys, notes, and maps specifically concerning off-site storage rooms, routes to additional "human stash houses" or "safe houses", lockers, and safety deposit boxes. This evidence may be found on their person or in their businesses, residences and surrounding garages, outbuildings, carports and yards, the residences of friends or relatives, and cars. This type of documentation can be stored on digital media and concealed virtually anywhere.

12. Evidence of significant, unexplained income of human smugglers, or for the acquisition and concealment of money and assets of human smuggling efforts, can be found on

banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail.  These records can be maintained on paper, but also can be maintained as electronic data on computers and other digital media.  The above items are typically kept by human smugglers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

13. The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for human smuggling organizations. Information stored in electronic form on all of the above devices can provide evidence of human smuggling and/or drug trafficking. Human smugglers frequently use some or all of these devices to communicate with co-conspirators, and others involved in the human smuggling trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. The content of these communications will often provide evidence of human smuggling. Numbers stored on a telephone (such as Caller ID lists reflecting recently received

calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the human smuggler is calling, and thus the identity of potential associates.

14. Human smuggling organizations often maintain firearms and ammunition on their person or in their homes, businesses or cars to protect themselves, the undocumented persons they are smuggling into or across the United States, their associates, and their profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, firearms cleaning supplies, and instruction manuals and other documentation for firearms and ammunition. I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for human smugglers, who often keep firearms in close proximity to themselves and their contraband to protect them from other smugglers and law enforcement.

15. Documents showing who owns, occupies, or controls the location being searched also show who is responsible for the items found on the premises, including contraband, undocumented persons, and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts. These documents may also be produced on computers, downloaded from online accounts or scanned into digital format and stored on computers and related digital media.

16. Based on my training and experience, particularly my experience relating to the investigation of properties such as the one listed in Attachment A, I know that it is common for human smugglers in such areas to keep evidence of their crimes throughout their properties. I

further know that all of the evidence described above could be located not only in the main residence, adjoining or adjacent building sharing the same property, but also in garages, outbuildings, storage containers, safes, safety deposit boxes, sheds, barns, vehicles, and even buried in the ground.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the property of the TARGET PREMISES in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and other storage media, such as computer hard drives, external hard drives, thumb drives, secure digital cards and other types of flash memory cards, compact disks and floppy disks, personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. For this reason, I submit that if a computer aided digital medium or storage medium is found on the property of the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Because several people appear to share the TARGET PREMISES, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

18. *Necessity of seizing or copying entire computers or storage media*.  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

19. *The time required for an examination*. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

20. *Technical requirements*.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

21. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

22. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying of computers, cellular devices, and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

**INVESTIGATION**

23. On Thursday, January 26th, 2023, Homeland Security Investigations (HSI) Special Agent (SA) Eric Millard received information from the Bernalillo County Sheriff's Office in reference to a possible human smuggling stash house in Albuquerque, NM, where persons are reportedly being held against their will.

24. According to Deputies of the Bernalillo County Sheriff's Office (BCSO), a male whose initials are A.V.L., a citizen of Ecuador, arrived at a BCSO substation and informed deputies that he had escaped the TARGET PREMISES. Prior to his escape, V.L. reported he was being held against his will at the location by a human smuggling organization (HSO). V.L. reported approximately forty additional undocumented non-citizens (UNC) were also being held at the TARGET PREMISES against their will.

25. During his escape, V.L. reported that he asked several other UNC's if they wanted to escape with him, however; they refused by claiming they feared reprisal from members of the HSO. V.L. identified himself as a citizen of Ecuador and stated he was smuggled into the U.S. by a HSO with the intention of reaching New York as his final destination.

26. After meeting with me and additional HSI personnel at the BCSO substation, V.L. accompanied SA Millard as he drove to the neighborhood to identify and obtain the address of TARGET PREMISES. At approximately 9:50 AM, V.L. positively identified the TARGET PREMISES as the above provided residential address. HSI SA's immediately began physical surveillance of the TARGET PREMISES.

27. During interviews with HSI SA's, V.L. stated he observed an unidentified member of the HSO with a handgun, described by V.L. as being a revolver. V.L. then reported

that he observed the unidentified person place the revolver on top of a cabinet located in the kitchen while he was being held against his will at the TARGET PREMISES.

28. During his interview with SA's, V.L. reported the TARGET PREMISES had several CCTV cameras positioned on the property. The HSI Special Response Team (SRT) confirmed these statements after conducting a drone fly-over of the TARGET PERMISES.

29. At approximately 11:00 AM, HSI SA's conducted a vehicle stop of a tan-in-color Toyota Sequoia, bearing New Mexico (NM) license plate CT02743 after it departed the TARGET PREMISES. SA's encountered the driver, Carlos Vicente PARRA-Charco, a citizen of Ecuador who was determined to be a UNC. After running vehicle registration record checks, SA's learned that the vehicle was insured to PARRA two days prior to the vehicle stop. PARRA did not have a valid license, or registration for the vehicle.

30. During their encounter with PARRA, SA's observed on PARRA'S open phone, which was displaying a Google maps route to a location directly at the intersection of Coors Blvd and Blake Rd. SAs observed this location to contain two gas stations. Gas stations are locations commonly used by HSOs to transfer people and currency away from residences where they hide other UNCs. When questioned by the SA's about this, PARRA stated that he was on his way to the location to meet with another subject about purchasing a radio for his vehicle. SAs noted there was no such business at or near the location of Coors and Blake.

31. At approximately 1:45pm, SAs observed two people attempting to leave the property on foot. SAs identified both individuals as UNCs who were citizens of Mexico. Both UNCs stated they were staying in a shed on the property of the TARGET PREMISES.

## **CONCLUSION**

Based on the information and facts set forth in this affidavit, I believe the occupants of the TARGET PREMISES are in violation of Title 8 United States Code, Section 1324, and are using or have used the TARGET PREMISES in furtherance of these crimes.

Agents have observed and corroborated specific articulable facts consistent with human smuggling, and corroborated by V.L., in addition to observations by agents conducting physical surveillance, and the training and experience of SA Eric Millard.

Considering the facts set forth in this affidavit, there is probable cause to believe violation of Title 8 United States Code, Section 1324 have been committed, are being committed, and will continue to be committed by the occupants of the TARGET PREMISES. Furthermore, I submit there is probable cause to believe the occupants will continue utilizing the TARGET PREMISES in furtherance of human smuggling.

Thus, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the said premises, to include its surrounding storage sheds, vehicles, storage structures, and outbuildings on the property described in ATTACHMENT A, to search for, seize, and examine the items and/or assets set forth above and in ATTACHMENT B.

(Continued on following page)

AUSA Letitia Simms reviewed and approved this affidavit.

Respectfully submitted,

ERIC A MILLARD
Digitally signed by ERIC A MILLARD
Date: 2023.01.26 16:49:40 -07'00'

Eric Millard
Special Agent, HSI

Electronically submitted and telephonically sworn on January 26, 2023:

*B Paul Briones*

HONORABLE PAUL BRIONES
UNITED STATES MAGISTRATE JUDGE

14

**ATTACHMENT A**

The TARGET PREMISES is located at 1317A LA VEGA DR SW, ALBUQUERQUE, NEW MEXICO 87105. The TARGET PREMISES is described as a single wide trailer surrounded by fencing, outbuildings, and a storage shed at the end of the driveway. The residence is further depicted below:



# ATTACHMENT B

# ITEMS TO BE SEARCHED AND/OR SEIZED

1. Illegally smuggled or undocumented persons.

2. Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of human smuggling transactions.

3. Any and all customer lists, lists of human smuggling payees, lists of persons to be smuggled or lists of persons who have been smuggled illegally into the United States, travel records, smuggler records, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers or other persons to be illegally smuggled, and any corresponding records of accounts receivable, money paid or received, or cash received to pay for human smuggling or intended to pay for human smuggling efforts.

4. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

5. Telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other communication devices used by them and/or their human smuggling associates.

6. Messages, notes, correspondence, and/or communications between human smugglers and their co-conspirators.

7. Any and all financial or other instruments evidencing placement of assets in the names other than the names of the human smugglers themselves.

8. Books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation of suspected undocumented non-citizens.

9. Firearms and ammunition, including handguns, rifles, shotguns and automatic weapons.

10. Any and all computers, cellular devices, digital media, and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).